## STATE OF CONNECTICUT *v.* ANTONIO RIGUAL
### (SC 16026)

McDonald, C. J., and Borden, Palmer, Vertefeuille and Callahan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald and Justice Callahan reached the mandatory age of retirement before the date that this opinion officially was released, their continued participation on this panel is authorized by General Statutes § 51-198 (c).

1

Argued January 19, 2000—officially released May 8, 2001

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan Benedict,* state's attorney, *C. Robert Satti, Jr.,* senior assistant state's attorney, and *Daniel Borowy,* student intern, for the appellee (state).

*Karen L. Dowd, Kenneth J. Bartschi* and *Ronald A. Gonzalez* filed a brief for the Connecticut Bar Association et al. as amici curiae.

*Opinion*

VERTEFEUILLE, J. The issue in this appeal is whether the state is required to offer a nondiscriminatory reason to the court for exercising a peremptory challenge when the defendant claims the challenge is based on a prospective juror's ancestry or ethnic origin. We conclude that under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and its progeny, a prosecutor must offer a nondiscriminatory reason for removing a venireperson when a defendant raises such a claim.

The following procedural history is necessary to an understanding of the issues before this court. After a jury trial on a three count substitute information, the jury found the defendant, Antonio Rigual, not guilty of attempted murder in violation of General Statutes §§ 53a-49 (a)[1] and 53a-54a (a).[2] The jury convicted the defendant, however, of attempted assault of a peace officer in violation of General Statutes § 53a-49 and General Statutes (Rev. to 1995) § 53a-167c (a) (1),[3] as

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes (Rev. to 1995) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

well as commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.[4] The defendant appealed from the judgment of conviction to the Appellate Court, claiming that the trial court improperly had denied his motion to require the state to provide a nondiscriminatory reason for its peremptory challenge of a prospective juror. *State* v. *Rigual*, 49 Conn. App. 420, 422, 714 A.2d 707 (1998). The Appellate Court concluded that because the defendant, who is Hispanic, was not of the same racially cognizable group as the venireperson, who is Portuguese, the defendant could not raise a challenge under *Batson*. Id., 431. The Appellate Court therefore did not reach the merits of the defendant's *Batson* claim. Id.[5]

We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the trial court had not improperly denied the defendant's request to provide a race neutral explanation for [the state's] peremptory challenge of a venireperson of Portuguese descent?" *State* v. *Rigual*, 247 Conn. 924, 719 A.2d 1171 (1998). We now must decide: (1) whether the Appellate Court properly concluded that the defendant could not raise a *Batson*

[4] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[5] The defendant also claimed that the trial court had improperly instructed the jury on self-defense, and incorrectly sentenced the defendant on § 53-202k as a separate offense. *State* v. *Rigual*, supra, 49 Conn. App. 422. The Appellate Court vacated the defendant's conviction under § 53-202k and remanded the case for resentencing. Id., 432. The Appellate Court, however, found no impropriety with the trial court's self-defense instructions; id., 429; and did not address the merits of issue in the present appeal, having determined that the defendant had not met the threshold set out in *Batson*. Id., 431.

claim to the state's use of a peremptory challenge regarding a venireperson of a different ethnic background from the defendant; and (2) if the Appellate Court's conclusion was not proper, whether the rule in *Batson* applies to the use of a peremptory challenge on the basis of ethnic origin or ancestry.

The following facts are relevant to these two issues. During voir dire, both the state and the defendant questioned venireperson D.B.[6] During the questioning, D.B. stated that the Bridgeport police had arrested him nine months previously for driving under the influence.[7] The court also inquired of D.B., asking him at one point, "[a]re you Hispanic?" D.B. replied, "Portuguese." At the conclusion of the voir dire, the defendant accepted D.B. as a juror. The state, however, exercised a peremptory challenge to excuse him. The defendant then objected to the state's use of a peremptory challenge and asked the court to require the state to provide its reason for excusing D.B. Although defense counsel did not state specifically that his objection was a *Batson* claim, our reading of the record convinces us that the objection was grounded on *Batson*. In addition, the state, in its brief and at oral argument before this court, concedes that it treated the objection as a *Batson* claim. After hearing argument from both counsel, the court stated: "[The state has] a reason. They just haven't been required to state it. And the way we are here, I can't make them do that at this juncture." The defendant's objection to the peremptory challenge was overruled

---

[6] We refer to the venireperson by his initials to protect his privacy. See *State* v. *Hodge*, 248 Conn. 207, 229 n.25, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999).

[7] Bridgeport police also had arrested the defendant on the charges at issue in this case and a Bridgeport police officer was the victim of the defendant's assault on a peace officer charge in this case.

and the state never revealed its reason for excusing D.B.[8]

## I

As a threshold matter, we must determine the applicable standard of review that governs our examination of the defendant's claims. The scope of our review depends upon the appropriate characterization of the trial court's rulings. *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992). In the present case, the defendant contests the correctness of the Appellate Court's legal conclusions. Our review of those conclusions is plenary. Id.

The first issue in this appeal is whether the Appellate Court properly concluded that the defendant, who is Hispanic, could not raise a *Batson* claim to the state's challenge of a venireperson who identified himself as being Portuguese. In *Batson* v. *Kentucky,* supra, 476 U.S. 89, the United States Supreme Court held that the use of peremptory challenges by the state to strike venirepersons solely because they are members of the defendant's race violated the equal protection clause of the federal constitution. *Batson* established a three step procedure pursuant to which the defendant in a criminal case can challenge the state's use of peremptory challenges to exclude jurors because of their race. Id., 96–98. First, the defendant must provide proof of a prima facie case of discrimination by the state. Id., 96. The state then must proffer a neutral explanation for the peremptory challenge. Id., 97. Finally, the defendant must establish purposeful discrimination by the state.

---

[8] The state did appear ready, however, to present its reason for excusing venireperson D.B., if the court so required, as evidenced by the following exchange:

"The Court: You have no response, is that it?

"[Senior Assistant State's Attorney]: If you want me to give a response. At this point, I don't believe he has reached the threshold to have me give a response."

Id., 98. The *Batson* court explicitly limited its ruling to the use of peremptory challenges "to remove from the venire *members of the defendant's race.*" (Emphasis added.) Id., 96.

Several years later, however, the Supreme Court expanded the applicability of *Batson* claims, ruling that a criminal defendant may object to race-based exclusions of jurors through peremptory challenges regardless of whether the defendant and the excluded venirepersons are of the same race. *Powers* v. *Ohio*, 499 U.S. 400, 415–16, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). The defendant in *Powers*, a Caucasian, objected to the state's use of peremptory challenges to exclude black venirepersons. Id., 403. The trial court did not consider his objection because of the racial disparity between the defendant and the venirepersons. Id. The Supreme Court, however, concluded that the defendant had standing to raise the equal protection rights of jurors excluded from jury service. Id., 415. "We conclude that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race. . . . To bar [a] petitioner's claim because his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor, and privilege of jury services. In *Holland* [v. *Illinois*, 493 U.S. 474, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990)] and *Batson*, we spoke of the significant role peremptory challenges play in our trial procedures, but we noted also that the utility of the peremptory challenge system must be accommodated to the command of racial neutrality." (Citation omitted.) *Powers* v. *Ohio*, supra, 415.

In ruling that the Hispanic defendant in the present case could not make a *Batson* claim to the state's exclusion of a Portuguese venireperson, the Appellate Court relied on *Batson* and this court's application of *Batson*, with modification, in *State* v. *Holloway*, 209 Conn. 636,

553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). *State* v. *Rigual,* supra, 49 Conn. App. 430–31. The Appellate Court failed to consider, however, the United States Supreme Court's ruling in *Powers* v. *Ohio,* supra, 499 U.S. 415–16, which expanded the applicability of *Batson* to cases where the defendant and the excluded venireperson are not of the same race. As a result, the Appellate Court improperly concluded that the defendant, a Hispanic, could not raise a *Batson* claim to the exclusion of the Portuguese venireperson. *State* v. *Rigual,* supra, 49 Conn. App. 431. We conclude that the defendant had standing to object to the state's use of a peremptory challenge to excuse D.B. from becoming a juror in this case.

## II

We next must decide whether the rule in *Batson,* as modified by this court's decision in *State* v. *Holloway,* supra, 209 Conn. 636,[9] applies to prohibit the use of peremptory challenges on the basis of ethnic origin or ancestry. We conclude that it does.

In *Batson,* the United States Supreme Court established the rule of law that the use of peremptory challenges to exclude "a cognizable racial group"; *Batson* v. *Kentucky,* supra, 476 U.S. 96; from a jury violates the equal protection clause of the United States constitution. Id., 97. In subsequent cases, the Supreme Court extended *Batson* protection to other group classifications that trigger heightened scrutiny under traditional equal protection analysis. The court concluded in *Hernandez* v. *New York,* 500 U.S. 352, 355, 111 S. Ct. 1859,

---

[9] In *Holloway,* this court modified the three step *Batson* procedural framework as it is used in Connecticut by relieving a defendant of the need to make an initial prima facie showing of discrimination. *State* v. *Holloway,* supra, 209 Conn. 645–46. A defendant in this state need only make a *Batson* objection in order to trigger the requirement that the state respond with a nondiscriminatory reason for excusing the proposed juror. Id.

114 L. Ed. 2d 395 (1991), that the use by the state of peremptory challenges to exclude Latinos from a jury because of their ethnic origin would violate the equal protection clause. On the particular facts of that case, however, where the state's proffered reason for excusing the Latino venirepersons was that the venirepersons would have difficulty in accepting the court translator's rendition of testimony from Spanish to English because of their own knowledge of the Spanish language, the court found the state's excuse of the Latinos to be nondiscriminatory and valid. Id., 361; see also *United States* v. *Martinez-Salazar*, 528 U.S. 304, 315, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000) (peremptory challenges based on ethnicity violate equal protection clause).

In *J.E.B.* v. *Alabama ex rel. T.B.*, 511 U.S. 127, 143, 114 S. Ct. 1491, 128 L. Ed. 2d 89 (1994), the United States Supreme Court extended *Batson* protection to gender-based peremptory challenges and explained that peremptory challenges may not be used to excuse venirepersons on the basis of group classifications that trigger anything stricter than rational basis review under the equal protection doctrine. "Parties may . . . exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review." Id. *Batson* protection, the court articulated, is reserved for venirepersons from cognizable groups that are not normally the subject of rational basis review. Id.

It has long been settled that discrimination on the basis of ancestry or national origin violates the equal protection clause of the fourteenth amendment to the United States constitution and is subject to heightened scrutiny. *Hernandez* v. *Texas*, 347 U.S. 475, 479, 74 S. Ct. 667, 98 L. Ed. 866 (1954); see *Oyama* v. *California*, 332 U.S. 633, 646, 68 S. Ct. 269, 92 L. Ed. 249 (1948) (denying persons of Japanese descent right to own land operated to discriminate on basis of their ancestry or

ethnic origin); *Hirabayashi* v. *United States*, 320 U.S. 81, 100, 63 S. Ct. 1375, 87 L. Ed. 1774 (1943) (classification targeting Japanese-Americans triggered strict scrutiny). Further, the United States Supreme Court, in considering the term "race" as that term applied in a 42 U.S.C. § 1981 analysis, recognized that race encompassed those discriminated against based on "their ancestry or ethnic characteristics." *St. Francis College* v. *Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987).

Discrimination on the basis of ancestry or national origin clearly is in violation of the equal protection clause of the federal constitution. Consequently, *Batson*, which was decided on the basis of the equal protection clause, must be applied to protect venirepersons from being excused from juries because of their ancestry or national origin. We agree with the United States Supreme Court when it stated that, "[a]ll persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination." *J.E.B.* v. *Alabama ex rel. T.B.*, supra, 511 U.S. 142. Accordingly, we conclude that the trial court improperly failed to hold a *Batson* hearing to address the propriety of the state's exercise of a peremptory challenge to remove D.B. from the jury in this case.[10]

---

[10] We emphatically disagree with the dissent's conclusion that today's opinion "[b]y requiring a party to give an explanation for a peremptory challenge whenever requested by another party . . . eliminates peremptory challenges . . . and, ultimately, undermines the guarantee of an impartial jury under the federal constitution." Such a conclusion ignores our decision in *State* v. *Holloway*, supra, 209 Conn. 646, which requires a party to give an explanation for a peremptory challenge whenever another party asserts a *Batson* claim.

We perceive no reasoned basis for the dissent's call to apply *Holloway* only where a party and the challenged juror are of the same cognizable racial or ethnic group and to require a prima facie showing of juror discrimination in those instances where the party does *not* share the same race or ethnic origin as the prospective juror. The dissent relies on *United States*

Purposeful discrimination in the judicial system is intolerable. More than ten years after *Holloway*, we still find that this issue is of the "utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Holloway*, supra, 209 Conn. 645; see also *State* v. *Hodge*, 248 Conn. 207, 260–61, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). Therefore, we agree with other state Supreme Courts that it is in the best interest of justice to require trial courts to conduct *Batson* hearings upon any party's request when the opposing party exercises its peremptory challenges to remove members of a particular race, gender, ancestry or national origin. See footnote 10 of this opinion.

It is suggested that our ruling today will impose an onerous burden on our trial courts with respect to the jury selection process. We disagree. When a defendant raises a *Batson* objection to the state's use of a peremptory challenge to excuse a venireperson allegedly on the basis of ancestry or national origin, the state need only present a neutral, nondiscriminatory explanation

v. *Stavroulakis*, 952 F.2d 686 (2d Cir. 1992), to further articulate its claim that a prima facie case of discrimination was required in the current case. *Stavroulakis*, however, is from a jurisdiction that has not adopted the South Carolina rule that this court adopted in *Holloway*. See *State* v. *Holloway*, supra, 209 Conn. 646 n.4; *State* v. *Jones*, 293 S.C. 54, 58, 358 S.E.2d 701 (1987). Therefore, in light of *Holloway*, this case is not applicable.

We conclude that in light of *Powers*, *Holloway* must now be construed to require that trial courts hold a *Batson* hearing when one is requested by any person, regardless of the race, gender, ethnicity or national origin of that person. We join two other state Supreme Courts that follow the South Carolina rule that have concluded the same. See *Ex parte Bird*, 594 So. 2d 676, 687 (Ala. 1991) (trial judges must hold *Batson* hearing upon any party's request whenever other party exercises peremptory challenges to remove members of cognizable racial group from venire); *State* v. *Adams*, 322 S.C. 114, 124, 470 S.E.2d 366 (1996) (trial judge must hold *Batson* hearing when members of cognizable racial group or gender are struck and opposing party requests hearing, even where defendant is of different cognizable racial group or gender than stricken venireperson).

for the use of the challenge. If the court is persuaded that the state does in fact have a neutral reason for the exercise of the challenge, the court will overrule the objection and the matter will be concluded. If the court is not persuaded that the excuse of the juror is for a nondiscriminatory reason, the defendant must be given an opportunity to show purposeful discrimination by the state. The court will then rule on the objection.

Although our decision today is based on the equal protection clause of our federal constitution, it is important to recognize, that unlike the federal constitution, the equal protection provision of our state constitution *explicitly* prohibits discrimination on the basis of ancestry or national origin. Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, *ancestry, national origin,* sex or physical or mental disability." (Emphasis added.) This express prohibition against discrimination based on ancestry or national origin was adopted as part of our 1965 constitution. Our decision today therefore is in accord with the clear public policy of our state as reflected in the equal protection provision of our state constitution.[11]

Having concluded, first, that the defendant had standing to challenge the exclusion of D.B. by the state, and, second, that *Batson* and *Holloway* apply to the use of a peremptory challenge on the basis of national origin or ancestry, we now must decide the proper remedy

---

[11] Nothing in our ruling today alters the cognizable group analysis we previously have applied when peremptory challenges are allegedly utilized to excuse members of groups that do not enjoy heightened scrutiny for equal protection purposes. See *State* v. *McDougal,* 241 Conn. 502, 514–20, 699 A.2d 872 (1997).

to be applied. When the trial court improperly fails to hold a *Batson* hearing, there are two remedial alternatives. *State* v. *Robinson*, 237 Conn. 238, 253, 676 A.2d 384 (1996). "We could direct a limited remand, ordering the trial court to conduct a hearing now to determine whether the state's peremptory challenge was racially motivated. . . . This is the remedy usually invoked . . . . Alternatively, we could reverse the judgment of the Appellate Court and direct it to remand the case to the trial court with direction to set aside the judgment against the defendant and to conduct a new trial on the charges against him." (Citations omitted.) Id., 253–54.

In *Robinson*, this court, after concluding that the trial court improperly failed to hold a *Batson* hearing, ordered a new trial because there was "no reasonable possibility that the circumstances surrounding [the voir dire could] be reconstructed fairly . . . ." (Internal quotation marks omitted.) Id., 254. In ordering a new trial, we relied on the fact that five years had passed between the trial and the appeal to this court and that there was no record regarding what nondiscriminatory reason the state could offer for excluding the juror. Id.

In the present case, however, the state was prepared at the time of the voir dire to state its reason for excusing D.B. The state remains prepared to do so and, in fact, has set forth its reason in its brief filed in this court. It appears, therefore, that the circumstances surrounding the voir dire can be reconstructed and a limited remand is therefore appropriate.

Accordingly, we reverse in part the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court with direction to require the state to proffer a nondiscriminatory reason for excusing D.B. from the jury panel. If the state is unable to do so, or if the trial court finds that too much time has passed so that there is "no

reasonable possibility that the circumstances surrounding [the voir dire] can be reconstructed fairly"; (internal quotation marks omitted) id.; the trial court is directed to set aside the judgment against the defendant and to conduct a new trial.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with the preceding paragraph.

In this opinion BORDEN, PALMER and CALLAHAN, Js., concurred.

MCDONALD, C. J., dissenting. Under our supervisory authority, the majority eliminates the need to establish a prima facie case of purposeful juror discrimination before requiring a race neutral explanation of a peremptory challenge. See footnote 10 of the majority opinion.

By requiring a party to give an explanation for a peremptory challenge whenever requested by another party, the majority eliminates peremptory challenges, which are provided for in Connecticut's statutes and guaranteed by the Connecticut constitution,[1] and, ulti-

---

[1] Peremptory challenges are not only provided for in our statutes; see General Statutes §§ 51-241 and 54-82g; they are also guaranteed in our constitution.

General Statutes § 51-241 provides: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

General Statutes § 54-82g provides: "The accused may challenge peremptorily, in any criminal trial before the Superior Court for any offense punishable by death, twenty-five jurors; for any offense punishable by imprisonment for life, fifteen jurors; for any offense the punishment for which may be imprisonment for more than one year and for less than life, six jurors; and for any other offense, three jurors. In any criminal trial in which the accused is charged with more than one count on the information or where there is more than one information, the number of challenges is determined by the

mately, undermines the guarantee of an impartial jury under the federal constitution. See *Holland* v. *Illinois*, 493 U.S. 474, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990). Moreover, it does so under our supervisory authority, which we have held "is not a form of free-floating justice, untethered to legal principle. . . . Thus, [e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions. . . . *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988)." (Citation omitted; internal quotation marks omitted.) *State* v. *Pouncey*, 241 Conn. 802, 813, 699 A.2d 901 (1997).

In *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), this court exercised its supervisory powers to require an explanation if the state strikes venirepersons who are members of the defendant's cognizable racial group and the defendant requests a hearing under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).[2] *Holloway* was decided before the United States Supreme Court made clear in *Powers* v. *Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L.

count carrying the highest maximum punishment. The state, on the trial of any criminal prosecution, may challenge peremptorily the same number of jurors as the accused."

The constitution of Connecticut, article first, § 19, as amended by article four of the amendments, provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[2] The rule enunciated in *State* v. *Jones*, 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987), which this court adopted in *State* v. *Holloway*, supra, 209 Conn. 636, stated that "the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire." Id., 646 n.4.

Ed. 2d 411 (1991), that a party need not be of the same race as the excused juror to have standing to raise a *Batson* claim. After *Holloway*, the United States Supreme Court also extended *Batson* to peremptory challenges based on the gender and ethnic origin of the venireperson. See *United States* v. *Martinez-Salazar*, 528 U.S. 304, 315, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000), citing *Hernandez* v. *New York*, 500 U.S. 352, 362–63, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). In light of these later cases, the majority now extends the *Holloway* rule to cases where the defendant and the stricken venireperson are not claimed to have a common ethnic origin or ancestry. I submit that, in doing so, the majority misapplies the rule for standing to invoke *Batson* to the *Batson* requirement of a prima facie case of discrimination. Those aspects of *Batson* are, however, distinct. I would restrict the *Holloway* supervisory rule to cases where a party and the challenged juror are members of the same cognizable racial or ethnic group. I would require a prima facie showing of juror discrimination in all other circumstances. The difference between *Batson* standing and a *Batson* prima facie case was explained by Justice Kennedy in his concurrence in *Holland* v. *Illinois*, 493 U.S. 474, 488–90, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990). There he saw "no obvious reason to conclude that a defendant's race should deprive him of standing"; id., 489 (Kennedy, J., concurring); to raise a *Batson* claim, and explained, "*Batson* did contain language indicating that the peremptory challenge of jurors of the same race as the defendant presents a different situation from the peremptory challenge of jurors of another race, but I consider the significance of the discussion to be procedural. An explicit part of the evidentiary scheme adopted in *Batson* was the defendant's showing that he was a member of a 'cognizable racial group,' and that the excluded juror was a member of the same

group. See [*Batson* v. *Kentucky*, supra, 96–98]. The structure of this scheme rests upon grounds for suspicion where the prosecutor uses his strikes to exclude jurors whose only connection with the defendant is the irrelevant factor of race. It is reasonable in this context to suspect the presence of an illicit motivation, the 'belief that blacks could not fairly try a black defendant.' Id. . . . 101 (White, J., concurring). Where this obvious ground for suspicion is absent, different methods of proof may be appropriate." *Holland* v. *Illinois*, supra, 489–90 (Kennedy, J., concurring).

*Batson* required a prima facie case before a defendant could call for an explanation of a peremptory challenge. The Supreme Court held that "[t]he standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain* [v. *Alabama*, 380 U.S. 202, 223–24, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965)]. . . . These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery* v. *Georgia*, 345 U.S. [559, 562, 73 S. Ct. 891, 97 L. Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the

petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

"In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." (Citations omitted.) *Batson* v. *Kentucky*, supra, 476 U.S. 96–97. *Batson* also recognized that prosecutors may tend to act on the discriminatory assumption that a juror will be biased in favor of members of the juror's own race. In *Batson*, the Supreme Court held that the equal protection clause "forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black." Id., 97. When the defendant and the venireman are of the same cognizable race, therefore, the striking of a single venireman itself may be evidence that the prosecutor is making such an impermissible assumption. The *Holloway* rule recognizes that fact, and relieves the defendant in those circumstances of the burden of further establishing a prima facie case. When the defendant and the stricken venireman are of different races, gender or national origin, however, the "obvious ground for suspicion is absent"; *Holland* v. *Illinois*, supra, 493 U.S. 490 (Kennedy, J., concurring); where there is a single peremptory challenge. Then there is no prima facie case as required

by *Batson*, and "different methods of proof [are] . . . appropriate." Id.

The United States Court of Appeals for the Second Circuit confronted circumstances much like the ones in this case in *United States* v. *Stavroulakis*, 952 F.2d 686 (2d Cir. 1992). The trial court in that case, relying upon *Batson*, pre-*Powers*, had denied the defendant's *Batson* claim because the defendant was not of the same racial group as the excused juror. Id., 696–97. Recognizing that *Powers* conferred standing upon the defendant, the Second Circuit nevertheless upheld the trial court's ruling. Id., 697.[3] The Second Circuit concluded that a prima facie case had not been made out so as to require the prosecutor to come forward with a race-neutral justification under *Batson*. Id. The court held that mere reference to the race of one excluded venireperson, without more, was insufficient to raise an inference of discrimination. Id., 696. The court remarked that "[a] member of any race can be the subject of a proper peremptory challenge." Id.

[3] The Second Circuit stated, "[i]n *Batson*, the Supreme Court stated that a prima facie case of discrimination in jury selection requires a showing that the defendant 'is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.' *Batson* [v. *Kentucky*, supra, 476 U.S. 96] . . . . The Supreme Court has recently clarified this statement—after the district court ruled on the *Batson* question in this case—and it now holds that the defendant does not have to be of the same race as the excused juror to raise the Equal Protection argument. *Powers* v. *Ohio*, [supra, 499 U.S. 400]. Although Judge Griesa can hardly be faulted for following the letter of *Batson*, and it would seem that we are obliged to apply *Powers* to this case, see *Griffith* v. *Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987) (*Batson* rule applicable to cases pending on direct appeal), we do not find the error to be reversible. It is clear that the district court independently determined that there was no inference of discrimination to support defendant's prima facie case, regardless of defendant's race. And, granting the requisite deference to this finding by the district court, we are unable to say that the court erred in finding no inference of discrimination." *United States* v. *Stavroulakis*, supra, 952 F.2d 696–97.

The majority argues that *Stavroulakis* is not persuasive because the Second Circuit has not adopted the rule that this court adopted in *State* v. *Holloway,* supra, 209 Conn. 636. I agree that the Second Circuit has not adopted the *Holloway* rule, or the rule we adopt today.

The courts of Alabama and South Carolina may differ in their holdings from the holding of the Second Circuit Court of Appeals, the federal circuit in which this court is located, when applying *Batson*'s interpretation of the federal constitution. I, however, would find the Second Circuit's decision "particularly persuasive" and "entitled to great weight." (Internal quotation marks omitted.) *Turner* v. *Frowein,* 253 Conn. 312, 341, 752 A.2d 955 (2000); *Schnabel* v. *Tyler,* 230 Conn. 735, 743 and n.4, 646 A.2d 152 (1994); *Red Maple Properties* v. *Zoning Commission,* 222 Conn. 730, 739 n.7, 610 A.2d 1238 (1992). Ironically, the federal courts in Connecticut, bound by the Second Circuit ruling, will require a prima facie case before finding that an acceptable explanation of a peremptory challenge is necessary, while our state courts, despite the Connecticut constitution's guarantee of peremptory challenges, will not require one.

Today's ruling requires an explanation for every peremptory challenge of every prospective juror. All persons have, of course, a gender and some kind of ethnic origin or ancestry. The majority's ruling will transform the peremptory challenge into a challenge based upon some acceptable ground, perhaps less than those grounds needed for a challenge for cause. Because an explanation must be given and accepted by the court, such a challenge no longer will be a peremptory challenge.

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry, and without being subject to the court's control." *Swain* v. *Alabama,* supra, 380 U.S. 220. From

the time of Blackstone, the peremptory challenge, then venerable, has been defined as "an arbitrary and capricious species" of challenge. 2 W. Blackstone, Commentaries on the Laws of England (G. Sharswood ed. 1875) p. 353. Historically, the challenge was grounded on two reasons: (1) a defendant may conceive "unaccountable prejudices" from the "bare looks and gestures" of the juror during voir dire, and the defendant should not "be tried by any one man against whom he has a conceived a prejudice, even without being able to assign a reason for such his dislike"; id.; and (2) during voir dire to establish a challenge for cause, the questioning of a juror "may sometimes provoke a resentment" in the juror, which can be removed only by the use of a peremptory challenge. Id. These reasons are equally valid today. All fifty states and the federal system thus provide for peremptory challenges. See *Holland* v. *Illinois*, supra, 493 U.S. 482; *Swain* v. *Alabama*, supra, 380 U.S. 217. In *Batson*, the United States Supreme Court rejected "eliminating peremptory challenges entirely" as urged by Justice Marshall. *Batson* v. *Kentucky*, supra, 476 U.S. 99 n.22; id., 103 (Marshall, J., dissenting). The court, while stating that it did not share Justice Marshall's views, assumed trial judges could be alert to identify "a prima facie case of purposeful discrimination. Nor do we think that this historic trial practice, which long has served the selection of an impartial jury, should be abolished . . . ." Id., 99.

This court repeatedly has recognized that " 'the right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused . . . .' " *DeCarlo* v. *Frame*, 134 Conn. 530, 533, 58 A.2d 846 (1948), quoting *Pointer* v. *United States*, 151 U.S. 396, 408, 14 S. Ct. 410, 38 L. Ed. 208 (1894); *State* v. *McDougal*, 241 Conn. 502, 519, 699 A.2d 872 (1997). The United States Supreme Court also has recognized that the peremptory challenge is " 'a neces-

sary part of trial by jury' " and is required for the selection of an impartial jury. *Holland* v. *Illinois*, supra, 493 U.S. 484. "[T]he assurance of impartiality [is a legitimate state interest] that the system of peremptory challenges has traditionally provided." Id., 483. "The ideal that the peremptory serves is that the jury not only should be fair and impartial, but should seem to be so to those whose fortunes are at issue." B. Babcock, "Voir Dire: Preserving 'Its Wonderful Power,' " 27 Stan. L. Rev. 545, 552 (1975). "The symbolic-educative, impartiality-promoting role of the peremptory challenge makes it central to the jury trial right." Id., 555. Now we no longer have this ancient safeguard of that central right.

Moreover, the record in the present case plainly reflects a nondiscriminatory reason for the state's attorney's peremptory challenge. The challenged juror recently had been arrested by officers of the same police department responsible for the defendant's arrest. A detective from that department, the victim of the charge of assault of a peace officer, had been involved in a gun battle with the defendant and was the principal witness for the state. The trial court stated that the state had a reason to strike the juror. Where the nondiscriminatory reason for the peremptory challenge is obvious, I see no reason to return this case so that the state's attorney may state his reason to that judge.

As to the sufficiency of the explanation, there may be grounds in this case for a challenge for cause. We previously have recognized that the trial court should grant a challenge for cause as to prospective jurors who counsel reasonably believes, on the basis of questioning on voir dire, may be predisposed to decide a case on legally irrelevant grounds. See *State* v. *Griffin*, 251 Conn. 671, 699, 741 A.2d 913 (1999).[4] By way of example,

---

[4] "[A] challenge [for cause] to an individual juror for bias or prejudice can be either a principal challenge or a challenge to the favor. *McCarten* v. *Connecticut Co.*, [103 Conn. 537, 542, 131 A. 505 (1925)]. A principal challenge may arise when the connection between the prospective juror and either party is of so close a nature that, when the facts concerning the

the United States Supreme Court noted in *Hernandez v. New York,* supra, 500 U.S. 355, that Hernandez did not press his *Batson* claim with respect to two prospective jurors who, although also Hispanic, had brothers who were convicted of crimes, and one of whom was being prosecuted by the same district attorney's office prosecuting Hernandez.

Accordingly, I respectfully dissent.

relationship or interest are proven or when the prospective juror has formed or expressed an opinion on the question at issue, the disqualification is conclusively presumed. Id.; see, e.g., *State* v. *Kokoszka,* 123 Conn. 161, 164, 193 A. 210 (1937). A challenge to the favor, on the other hand, is one where the connection, being more remote, tends to show bias but does not create a conclusive presumption of bias. *McCarten* v. *Connecticut Co.,* supra, 542–43. *Johnson* v. *New Britain General Hospital,* [203 Conn. 570, 581–82, 525 A.2d 1319 (1987)].

"Examples of a principal challenge include relationship to either party to the suit . . . an interest in the outcome of the suit, either personal or as a member of a corporation, or the relation of master or servant . . . to either party . . . . *McCarten* v. *Connecticut Co.,* supra, [103 Conn.] 542. These relationships are held to import absolute bias or favor and require the disqualification of the juror as a matter of law. *State* v. *Kokoszka,* supra, [123 Conn.] 164. A challenge to the favor, however, is based on facts and circumstances . . . such as would tend to show bias but not such as to create a conclusive presumption of disqualification. Id., 164–65." (Internal quotation marks omitted.) *Morgan* v. *St. Francis Hospital & Medical Center,* 216 Conn. 621, 624, 583 A.2d 630 (1990).

