NICOLE ANN THIBODEAU *v.* DESIGN
GROUP ONE ARCHITECTS, LLC
(SC 16593)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued February 11—officially released July 2, 2002

*Michael D. O'Connell,* with whom were *Julia B. Morris* and, on the brief, *Diane C. Mokriski,* for the appellant (defendant).

*Gary Phelan,* with whom, on the brief, were *Kelly Balser* and *Elaine Rubinson,* for the appellee (plaintiff).

*Bernard E. Jacques* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Jennifer Jaff, Erin Boggs, Philip D. Tegeler* and *Lenora M. Lapidus,* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

*Jonathan L. Gould* and *Maureen M. Murphy* filed a brief for the Connecticut Employment Lawyers Association et al. as amici curiae.

*Opinion*

PALMER, J. Under the Fair Employment Practices Act, General Statutes § 46a-51 et seq. (act), employers with three or more employees are prohibited from discriminating against their employees on the basis of sex, including discrimination related to pregnancy. See General Statutes § 46a-60 (a) (1) and (7),[1] and

---

[1] General Statutes § 46a-60 (a) provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . .

"(7) For an employer, by himself or his agent: (A) To terminate a woman's employment because of her pregnancy; (B) to refuse to grant to that employee a reasonable leave of absence for disability resulting from her pregnancy; (C) to deny to that employee, who is disabled as a result of pregnancy, any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained by the employer; (D) to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so; (E) to fail or refuse to make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available in any case in which an employee gives written notice of her pregnancy to her employer and the employer or pregnant employee reasonably believes that continued employment in the position held by the pregnant employee may cause injury to the employee or fetus; (F) to fail or refuse to inform the pregnant employee that a transfer pursuant to subparagraph (E) of this subdivision may be appealed under the provisions of . . . chapter [814c]; or (G) to fail or refuse to inform his employees, by any reasonable means, that they must give written notice of their pregnancy in order to be eligible for transfer to a temporary position . . . ."

§ 46a-51 (10)[2] and (17).[3] At common law, an employer may terminate an at-will employee for any reason unless that reason violates some important public policy. This certified appeal raises an issue that lies at the intersection of the act and the public policy exception to the at-will employment doctrine, namely, whether an employer with fewer than three employees, although not subject to liability under the act, nevertheless is barred, on public policy grounds, from discharging an at-will employee on the basis of pregnancy. Because the act reflects an unambiguous policy determination by the legislature that employers with fewer than three employees shall not be subject to liability for sex discrimination, including pregnancy-related discrimination, we conclude that a common-law claim for wrongful discharge on the basis of pregnancy will not lie against those employers.

The plaintiff, Nicole Ann Thibodeau, commenced this action against the defendant, Design Group One Architects, LLC, her former employer, claiming that she had been wrongfully terminated because of her pregnancy. The trial court rendered summary judgment for the defendant, concluding that the plaintiff's discharge did not contravene public policy because the exemption under the act for employers with fewer than three employees reflects the considered judgment of the legislature that, for policy reasons, such employers shall not be required to defend against employment discrimination claims. The plaintiff appealed to the Appellate Court, which reversed the judgment of the trial court.

---

[2] General Statutes § 46a-51 (10) defines the term "employer" as "the state and all political subdivisions thereof and . . . any person or employer with three or more persons in his employ . . . ."

[3] General Statutes § 46a-51 (17) provides that " '[d]iscrimination on the basis of sex' includes but is not limited to discrimination related to pregnancy . . . ."

*Thibodeau* v. *Design Group One Architects, LLC,* 64 Conn. App. 573, 594, 781 A.2d 363 (2001). We granted the defendant's petition for certification to appeal to this court; *Thibodeau* v. *Design Group One Architects, LLC,* 258 Conn. 919, 782 A.2d 1252 (2001); and now reverse the judgment of the Appellate Court.

The relevant facts and procedural history are set forth in the opinion of the Appellate Court. "In April, 1997, the defendant hired the plaintiff as a receptionist, secretary and bookkeeper. She was an at-will employee. At all times relevant, the defendant employed two individuals and had three principals. The act applies only to those employers with three or more employees. General Statutes § 46a-51 (10).[4]

"The plaintiff notified the defendant of her pregnancy in December, 1997. The defendant terminated the plaintiff's employment on or about April 28, 1998. The plaintiff filed a two count complaint on November 5, 1999, alleging wrongful termination of her employment in violation of public policy and a violation of the duty of good faith and fair dealing. The plaintiff alleged in her complaint that the defendant had terminated her 'as a result of her doctor appointments,' which reason contravened public policy. In its answer, the defendant alleged that the plaintiff's termination stemmed from her performance deficiencies. The defendant alternatively denied that the plaintiff could avail herself of Connecticut's public policy or federal public policy against pregnancy discrimination as embodied in General Statutes § 46a-60 (a) (7)[5] and [Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.],[6] respectively.

---

[4] See footnote 2 of this opinion.

[5] See footnote 1 of this opinion.

[6] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2 (a) (1) (1994). This prohibition applies to discrimination on the basis of pregnancy.

"On January 14, 2000, the defendant filed a motion for summary judgment, claiming that the public policy proffered by the plaintiff did not apply to the facts of the case and, therefore, that the defendant was entitled to judgment as a matter of law. On March 31, 2000, the court granted the defendant's motion and rendered judgment . . . in favor of the defendant as to count one, which alleged wrongful discharge. [The trial court reasoned that although there exists in this state a public policy against employment discrimination on the basis of pregnancy, that policy, under the act, is limited to employers with three or more employees and, therefore, is inapplicable to the defendant.] Because the court determined that the defendant did not wrongfully discharge the plaintiff in violation of [that] public policy, the second count, alleging a violation of the duty of good faith and fair dealing, necessarily failed.[7] . . . Thus, the court rendered summary judgment as to both counts."[8]

42 U.S.C. § 2000e (k) (1994). The antidiscrimination provisions of Title VII are applicable only to employers with fifteen or more employees. See 42 U.S.C. § 2000e (b) (1994).

[7] The Appellate Court explained, and the plaintiff does not dispute, that this court "requires an at-will employee to challenge his or her dismissal on the basis of a public policy violation whether the plaintiff frames the claim in tort or in contract. Therefore, if the plaintiff's tort claim fails because there was no public policy violation, an alleged violation of the implied covenant of good faith and fair dealing similarly fails." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 576 n.2.

[8] "In its memorandum of decision, the [trial] court recognized the existence of a factual dispute concerning the plaintiff's termination. The plaintiff asserted that her pregnancy precipitated her discharge, whereas the defendant insisted that it was her poor job performance. The court held, however, that even if the plaintiff's allegation accurately identified the reason for her termination, an at-will employee has no cause of action for wrongful discharge when an employer of fewer than three persons fires her on the ground of pregnancy." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 577. As the Appellate Court aptly noted, a "motion to strike for failure to state a cause of action could have resolved that question. See *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 693 A.2d 293 (1997); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980). The motion for summary judgment, and the affidavit and counteraffidavit filed in connection therewith, raised a question of fact that would

(Citation omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 575–76.

On appeal, the Appellate Court reversed the judgment of the trial court, concluding that, notwithstanding the exemption afforded small employers under the act, "there is a public policy in Connecticut against sex discrimination in employment sufficiently expressed in statutory and constitutional law to allow a [wrongful discharge] cause of action for discrimination based on pregnancy [against such employers]."[9] Id., 574. We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that there exists a public policy in Connecticut that forbids an employer of fewer than three employees from terminating an at-will employee on the basis of pregnancy?" *Thibodeau* v. *Design Group One Architects, LLC*, supra, 258 Conn. 919. We disagree with the Appellate Court that this state's public policy prohibiting employment discrimination on the basis of pregnancy extends to employers with fewer than three employees. Consequently, we conclude that the trial court properly determined that the defendant is entitled to judgment as a matter of law.

We begin our analysis of the certified issue by setting forth the law governing the public policy exception to the at-will employment doctrine. "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to

have precluded summary judgment if the plaintiff had stated a cause of action." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 574 n.1.

[9] Having concluded that the plaintiff had stated a cause of action against the defendant, the Appellate Court remanded the case to the trial court for its resolution of the factual question raised in the parties' competing affidavits as to whether the defendant terminated the plaintiff because of her pregnancy or because of her poor job performance. See *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 594.

terminate the relationship for any reason, or no reason, at any time without fear of legal liability. Beginning in the late 1950s, however, courts began to carve out certain exceptions to the at-will employment doctrine, thereby giving rise to tort claims for wrongful discharge. Certain employer practices provoked public disfavor, and unlimited employer discretion to fire employees eventually yielded to a more limited rule." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 577.

Following that trend, this court, in *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), "sanctioned a common-law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety derived from some important violation of public policy. Id., 475;[10] see *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986); *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984). In doing so, we recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees. *Antinerella* v. *Rioux*, 229 Conn. 479, 492, 642 A.2d 699 (1994). In *Morris* v. *Hartford Courant Co.*, supra, 680, we recog-

---

[10] In *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 471, the plaintiff was employed, on an at-will basis, by a frozen foods producer as a quality control director and operations manager. Id., 472–73. He alleged that he was fired because he had notified his employer that various product labels contained false or misleading information regarding the product's weight or condition in violation of the requirements of the Connecticut Uniform Food, Drug and Cosmetic Act, General Statutes (Rev. to 1977) § 19-211 et seq., now codified at General Statutes § 21a-91 et seq. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 478. We concluded that the plaintiff, who faced potential criminal sanctions for failing to report the mislabelings; id.; see General Statutes (Rev. to 1977) § 19-215, now codified at General Statutes § 21a-95; had stated a claim for wrongful discharge on the basis of his contention that he was dismissed in retaliation for his efforts to ensure that his employer's products would comply with the applicable law relating to labeling. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 480.

nized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy. . . . *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580–81, 693 A.2d 293 (1997)." (Internal quotation marks omitted.) *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 798, 734 A.2d 112 (1999); accord *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 76–77, 700 A.2d 655 (1997).

On several occasions since the release of our decision in *Sheets*, we have recognized the sufficiency of a claim under the public policy exception to the at-will employment doctrine. For example, in *Antinerella* v. *Rioux*, supra, 229 Conn. 479, we held that the plaintiff, a deputy sheriff, had stated a claim for wrongful termination against the defendant, the high sheriff of Hartford county; id., 493–94; predicated upon the deputy sheriff's allegation that the high sheriff had discharged him "in order to take [over] his [process serving] business and personally benefit under [a] statutorily forbidden and illegal fee splitting arrangement he had made with several appointed deputy sheriffs."[11] Id., 491. In so holding, we noted that the "case [had] present[ed] claims that genuinely involve[d] the mandates of public policy derived directly from state statutes." Id., 493.

In *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 578–79, the plaintiff alleged that he had been

---

[11] The high sheriff's alleged misconduct violated General Statutes § 6-36 and General Statutes (Rev. to 1993) § 6-46, both of which authorize the removal from office of any high sheriff who engages in fee splitting. *Antinerella* v. *Rioux*, supra, 229 Conn. 494; see General Statutes § 6-36; General Statutes (Rev. to 1993) § 6-46.

fired for refusing to participate in an illegal scheme to defraud the government in connection with the use of defective parts in the production of helicopters. In reversing the judgment of the trial court striking the count of the plaintiff's complaint alleging that his termination was contrary to the policy expressed in the Major Frauds Act, 18 U.S.C. § 1031, we concluded that a wrongful discharge claim could be predicated solely on a violation of federal, as opposed to state, law. Id., 584–86.

Similarly, in *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 66, we rejected the defendant employer's claim that the plaintiff employee, an instructor of aircraft maintenance, had failed to state a claim for wrongful discharge on the basis of his allegation that he was terminated for refusing to comply with his employer's directive to report to work at a Bahrain military base notwithstanding the issuance of a travel advisory by the United States Department of State counseling against all nonessential travel to Bahrain owing to military action in the Persian Gulf region.[12] See id., 85–87. We rested our conclusion on the fact that the plaintiff's claim of a public policy violation found support in several state statutes explicitly requiring employers to maintain a reasonably safe workplace for its employees.[13] See id., 79–80.

Although we have been willing to recognize, pursuant to *Sheets* and its progeny, a claim for wrongful termina-

[12] The plaintiff employee was assigned to work in Bahrain in September, 1990; *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 68–69; "at [which] time the United States . . . and certain allied nations, including Bahrain, were involved in a joint military action, known as Operation Desert Shield, taken in response to the Iraqi invasion of Kuwait." Id., 69.

[13] The plaintiff employee relied primarily on General Statutes § 31-49, which provides that employers shall exercise reasonable care to maintain a reasonably safe workplace for their employees, and General Statutes § 31-370, which requires employers to furnish their employees with employment and a place of employment free from recognized hazards likely to cause death or serious physical injury to their employees.

tion in appropriate cases, we repeatedly have underscored "our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . ." Id., 79; accord *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 159, 745 A.2d 178 (2000); see also, e.g., *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477 ("courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation"). Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy. See, e.g., *Burnham* v. *Karl & Gelb, P.C.*, supra, 61 (plaintiff failed to state claim because allegations of retaliatory discharge did not satisfy requirements of statute upon which claim was based); *Daley* v. *Aetna Life & Casualty Co.*, supra, 249 Conn. 804 (plaintiff could not prevail on claim that public policy required employers to provide flexible work schedules for working parents because no statute mandates such accommodation); *Carbone* v. *Atlantic Richfield Co.*, 204 Conn. 460, 468–70, 528 A.2d 1137 (1987) (oil company employee, who had been terminated for failing to obtain accurate information regarding competitors' pricing practices, did not allege facts sufficient to support claim that termination violated public policy); *Morris* v. *Hartford Courant Co.*, supra, 200 Conn. 680 ("[a] false but negligently made accusation of criminal conduct as a basis for dismissal is not a 'demonstrably improper reason for dismissal' " when employer not statutorily obligated to investigate veracity of allegation). In each such instance, we found no statutorily based expression of public policy sufficient to warrant an exception to the at-will employment doctrine.

We now turn briefly to the pertinent provisions of the act, which prohibit discriminatory employment

practices on the basis of sex, including discrimination related to pregnancy. See footnotes 1 and 3 of this opinion. The act creates a mechanism pursuant to which any person claiming to be aggrieved by a discriminatory employment practice may seek administrative redress through the commission on human rights and opportunities (commission). See General Statutes § 46a-82 et seq. The act further provides that any such person who has timely filed a complaint with, and obtained a release from, the commission also may bring a civil action against his or her employer. See General Statutes §§ 46a-100 through 46a-104. A complainant who successfully prosecutes a civil action under the act is entitled to "such legal and equitable relief [as the court may deem] appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." General Statutes § 46a-104. As originally enacted, the act applied only to employers with five or more employees. Public Acts 1947, No. 171, § 1. In 1967, however, the act was amended to include employers with three or more employees. Public Acts 1967, No. 253 (codified as amended at General Statutes § 46a-51 [10]). Although the act has been amended many times since 1967; e.g., Public Acts 1979, No. 79-480, § 1 (extending protections of act to cover discrimination based on present or past history of mental disorder); Public Acts 1980, No. 80-285 (extending protections of act to cover sexual harassment); Public Acts 1990, No. 90-330, § 3 (extending protections of act to cover discrimination based on learning disability); Public Acts 1998, No. 98-180 (extending protections of act to cover discrimination based on genetic information); the legislature has retained the exemption for employers with fewer than three employees.

Our resolution of this appeal hinges on the significance of the statutory exemption for employers with fewer than three employees. In particular, we must

determine whether that exemption reflects a policy decision by the legislature to shield those employers from exposure to discrimination claims generally. If so, allowing the plaintiff to maintain her wrongful discharge action against the defendant would contravene that legislative policy.

In the present case, the Appellate Court rejected the view advanced by the defendant and adopted by the trial court that the statutory exemption for employers with fewer than three employees constitutes an expression of this state's public policy that that category of small employers should not have to defend against discrimination claims, including claims, such as the one in the present case, alleging discrimination on the basis of pregnancy. The Appellate Court observed that the act "announced a general public policy against sex discrimination in employment"; *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 584; and concluded that "the language, history and public policy underlying the act . . . reflect a cognizable legislative and societal concern for eliminating discrimination on the basis of sex in Connecticut." Id., 586. In rejecting the argument that the act's exemption for small employers constitutes a limited exception to that otherwise broad policy mandate, the Appellate Court reasoned that the "act *both* embodies a public policy, which is universal for all employees, and provides a statutory remedy, which is limited to employees who work for employers with three or more employees. There are public policy considerations inherent in the question of whether we should uniformly and blindly follow § 46a-51 (10) regardless of the fact situation of the particular case. We determine that the statutory subsection must be read within the boundaries imposed by our public policy as expressed elsewhere in the same statute, other statutes and our constitution." (Emphasis in original.) Id.

The Appellate Court further explained: "A distinction exists between the policy underlying a statute and the remedy provided by the statute to accomplish that policy. We are not alone in identifying that distinction. In a case involving an action for wrongful discharge on the basis of sex discrimination in which the defendant employed fewer than the minimum number of employees required by the state antidiscrimination law, the Washington Supreme Court recently stated: 'By [the statutory section defining employer] the legislature narrows the statutory remedies but does not narrow the public policy which is broader than the remedy provided. Thus, the statutory remedy is not in itself an expression of the public policy, and the definition of "employer" for the purpose of applying the statutory remedy does not alter or otherwise undo to any degree th[e] state's public policy against employment discrimination. . . . If it is argued that the exclusion of small employers from the statutory remedy is itself a public policy, that policy is simply to limit the statutory remedy, but is not an affirmative policy to "[exempt] small employers from [common-law] discrimination suits." ' *Roberts* v. *Dudley*, 140 Wash. 2d 58, 70, 993 P.2d 901 (2000) (en banc)." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 586–87.

In addition to the act itself, the Appellate Court relied on several statutory provisions contained in chapter 814c of the General Statutes, entitled "Human Rights and Opportunities," that prohibit discrimination on the basis of sex in certain circumstances.[14] Id., 588 n.9. The

---

[14] The Appellate Court cited the following provisions contained in chapter 814c of the General Statutes: "General Statutes § 46a-58 (prohibiting deprivation of rights on account of sex); General Statutes § 46a-64 (prohibiting discriminatory public accommodations practices); General Statutes § 46a-64c (prohibiting discriminatory housing practices); General Statutes § 46a-66 (prohibiting discriminatory credit practices); General Statutes § 46a-70 (guaranteeing equal employment in state agencies); General Statutes § 46a-71 (prohibiting discriminatory practices by state agencies); General Statutes § 46a-72 (prohibiting discrimination in job placement by state agencies);

Appellate Court also noted that a number of federal laws, including "Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.], the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e (k), similarly announce a public policy against sex discrimination." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 588–89. The Appellate Court further concluded that the public policy of this state in regard to sex discrimination in employment may be gleaned from the equal protection clause of the state constitution,[15] which guarantees the equal protection of laws and specifically prohibits, inter alia, sex-based discrimination in connection with a person's exercise or enjoyment of his or her civil or political rights. Id., 589, citing Conn. Const., amend. XXI. Finally, the Appellate Court relied on our pronouncement in *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 34, 357 A.2d 498 (1975), that the legislature's record of combating sex discrimination, in employment and otherwise, " 'evidences a firm commitment . . . to do away with sex discrimination altogether.' "[16] *Thibo-*

General Statutes § 46a-73 (prohibiting discrimination in state licensing and charter procedures); General Statutes § 46a-75 (prohibiting discrimination in educational and vocational programs); General Statutes § 46a-76 (prohibiting discrimination in allocation of state benefits)." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 588 n.9.

[15] Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides in relevant part: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of . . . sex . . . ."

[16] Judge Flynn concurred in the result reached by the Appellate Court majority in *Thibodeau*, but disagreed with the majority's reliance on the act itself as a source of the public policy underlying the exception to at-will employment doctrine. *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 594–96 (*Flynn, J.*, concurring). In so concluding, Judge Flynn relied on the legislative determination, as expressed in the act, that an employee has no remedy against an employer with fewer than three employees. Id., 595. Judge Flynn stated further: "Instead, I would look to the act only to ensure that its policy is not at odds with the public policy we find elsewhere, conclude that the act's statutory policy is consistent

*deau* v. *Design Group One Architects, LLC,* supra, 588, quoting *Evening Sentinel* v. *National Organization for Women,* supra, 34; see also *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 297, 528 A.2d 352 (1987) (noting state's "compelling" interest in eliminating discrimination against women).

Although we acknowledge that there exists a general public policy in this state to eliminate all forms of invidious discrimination, including sex discrimination, we nevertheless disagree with the Appellate Court that the plaintiff therefore is entitled to maintain a discriminatory discharge claim against this defendant. Our disagreement arises from the fact that the exemption contained in the act for employers with fewer than three employees is, itself, an expression of public policy that cannot be separated from the policy reflected in the act's ban on discriminatory employment practices. To conclude otherwise would require us to turn a blind eye to the legislative policy decision reflected in the statutory exemption for small employers and to the reasons underlying that decision.

Although the legislative history of the act is silent as to why the legislature chose to exempt small employers from the purview of the act,[17] the primary reason for

with the strong, clear and fundamental public policy we find in the other sources, and permit a *Sheets* type remedy if the at-will employee in the small workplace can prove her claim that she was wrongfully discharged because of pregnancy." Id., 595–96.

[17] As we have indicated, the act as originally passed excluded employers with fewer than five employees. Public Acts 1947, No. 171, § 1. No legislative history is available regarding that or any other provision of Public Acts 1947, No. 171. The legislative history of Public Acts 1967, Nos. 253 and 426, § 2, which expanded the coverage of the act to employers with three or more employees and added the prohibition against sex discrimination, respectively, also is silent with respect to the reason for the small employer exemption. It is noteworthy, however, that, in 1967, the legislature decided to continue to exempt a category of small employers notwithstanding the existence of testimony urging coverage of all employers in the state. For example, Jerome Caplan, speaking on behalf of the League of Women Voters

the exemption cannot be doubted: the legislature did not wish to subject this state's smallest employers to the significant burdens, financial and otherwise, associated with the defense of employment discrimination claims. Indeed, this reason formed one of the primary bases for Congress' decision to exempt employers with fewer than fifteen employees from the analogous antidiscrimination provisions of the Title VII of the Civil Rights Act. *Papa* v. *Katy Industries, Inc.*, 166 F.3d 937, 940 (7th Cir. 1999) ("The purpose [of the minimum employee threshold under Title VII] is not to encourage or condone discrimination . . . . [Rather] [t]he purpose is to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail."); see also *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995) (Congress sought to protect small employers from costs associated with litigating discrimination claims under Title VII by establishing minimum employee requirement); *Miller* v. *Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993),

of Connecticut, stated in relevant part: "Based on a nationwide study and consensus, members of the League of Women Voters believe that all levels of government share the responsibility of providing equality of opportunity for all persons in the [United States]. [This proposed legislation] would provide more employment opportunities to people in Connecticut by including more employers under the coverage of the [act].

"However, since the League of Women Voters believes that *all* people should have equal employment opportunities, we respectfully suggest that *all* employers might be subject to the provisions of the [act]." (Emphasis in original.) Conn. Joint Standing Committee Hearings, Labor, 1967 Sess., p. 142; see also id., p. 143, remarks of Arthur Green, director of the state commission on civil rights, the predecessor to the commission on human rights and opportunities ("It is very important that we extend as much as possible coverage to all our citizens equal opportunities in employment. Passage of this measure would do just that. . . . [M]any of the states of this nation have indeed gone beyond five, three, four [employees], and many states have now held that all employers are covered by this act. We do feel that if this Committee would see favorably to pass on this measure, it would help a great deal to provide more opportunities for our citizens.").

cert. denied sub nom. *Miller* v. *La Rosa*, 510 U.S. 1109, 114 S. Ct. 1049, 127 L. Ed. 2d 372 (1994) (same). It also is likely that our state legislature, like Congress, was concerned with "the protection of intimate and personal relations existing in small businesses . . . ." *Tomka* v. *Seiler Corp.*, supra, 1314. In addition, we reasonably may presume that the legislature was motivated to exempt small employers in part because its fundamental objective was to eliminate discrimination on a larger scale; see *Jennings* v. *Marralle*, 8 Cal. 4th 121, 134, 876 P.2d 1074, 32 Cal. Rptr. 2d 275 (1994); and because of the difficulties inherent in detecting and policing discrimination on a small scale. Id., 133.

Although one may agree or disagree that these reasons provide a convincing basis for exempting small employers from the act, we are not free to disregard the legislative policy determination upon which the exemption is founded. See, e.g., *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 661, 784 A.2d 323 (2001) ("[this] court is precluded from substituting its own ideas of what might be a wise [policy] in place of a clear expression of legislative will"). Our failure to recognize the public policy reflected in the exemption of small employers would expose them to liability for employment discrimination claims notwithstanding a clearly expressed legislative preference to the contrary. To disregard that policy decision would violate a fundamental principle underlying our recognition of public policy exceptions to the at-will employment doctrine, namely, that we may not "ignore [a] statement of public policy that is represented by a relevant statute." *Daley* v. *Aetna Life & Casualty Co.*, supra, 249 Conn. 804; see also *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480 ("[c]ertainly when there is a relevant state statute we should not ignore the statement of public policy that it represents").

The dissent states that "the majority concludes, without expressly saying so, that it is the public policy of this state to permit small employers to discriminate against their employees on the basis of sex." That inaccurate characterization of our conclusion is tantamount to saying that the legislature, in defining the term "employer" in § 46a-51 (10) as it did, made a policy determination favoring sex discrimination by those employers who do not fall within that definition. The purpose of the statutory definition of "employer" is neither to condone nor to encourage sex discrimination but, rather, to relieve small employers from the burdens of defending against sex discrimination claims. In other words, the policy underlying the definition recognizes that some otherwise meritorious sex discrimination claims may go unremedied. It also reveals the legislature's recognition, however, that small employers should not have to litigate unmeritorious claims. Thus, the policy underlying the definition is not to permit sex discrimination. The definition, rather, reflects a considered legislative judgment that it is the public policy of this state to shield small employers from having to bear the costs of litigating sex discrimination claims regardless of their merit.

By recognizing this legislative policy judgment, we do not minimize the beneficent purposes of the act. Indeed, the important and salutary public policy expressed in the antidiscrimination provisions of the act cannot be overstated. As we have explained, however, the act also embodies a second public policy, namely, that employers with fewer than three employees shall not be required to defend against employment discrimination claims. Contrary to the urging of the plaintiff, we cannot give voice to the act's prohibitions and simultaneously ignore its exemption for small employers, for the latter operates as a limitation on the former. As the California Supreme Court has succinctly

put it, "when the . . . statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action." *Moorpark* v. *Superior Court*, 18 Cal. 4th 1143, 1159, 959 P.2d 752, 77 Cal. Rptr. 2d 445 (1998).

The plaintiff disputes the foregoing proposition, asserting that, although the legislature shielded small employers from the administrative procedures and remedies of the act, the legislature did not necessarily intend that those employers also would be protected against common-law discriminatory discharge claims. In support of this contention, the plaintiff notes the differences between the remedies available under the statutory scheme and those available to a plaintiff who successfully prosecutes a common-law wrongful discharge action. We are not persuaded that these distinctions support the plaintiff's contention.

The plaintiff first maintains that the legislature reasonably may have been prompted to exclude small employers from the act to relieve them from the burdens of the administrative scheme created by the act. The plaintiff contends that, under this rationale for the statutory exemption, subjecting an employer with fewer than three employees to a common-law wrongful discharge action would not be inconsistent with any policy embodied in the act inasmuch as the employer would not be exposed to any administrative mechanism. We reject this argument because we disagree with its premise, namely, that the act's administrative scheme is burdensome.

That scheme, which requires complaints to be filed with and investigated by the commission; see General Statutes §§ 46a-82 and 46a-83; and which provides for the conciliation, arbitration and mediation of disputes; see General Statutes §§ 46a-83 (f) and 46a-83b; "was

designed to provide both complainants and respondents with a means to resolve discrimination claims without the greater delay and expense characteristic of bringing an action in state or federal court." *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 298, 777 A.2d 645 (2001) (*Zarella, J.,* concurring in part and dissenting in part); see also *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 696–97, 674 A.2d 1300 (1996) (pertinent provisions of act intended to provide parties with mechanism for fair, expeditious and informal resolution of civil rights complaints). Thus, a purpose of the administrative complaint procedure is to *protect* employers; as we previously have stated, that procedure is designed "to guard against subjecting a respondent to a hearing upon every complaint which might be made to the commission, however unfounded. To guard against such an eventuality, the statute requires the commission, once a complaint has been filed, to investigate it, and it is only after such preliminary investigation has established that there is reasonable cause for action and after arbitration methods have failed that a hearing is authorized." (Internal quotation marks omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 691, quoting *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 235, 278 A.2d 771 (1971). Contrary to the argument advanced by the plaintiff, there is no reason to suggest that the legislature would have excluded small employers from the administrative scheme, which was designed to protect, among others, all employers from the burdens of meritless litigation, unless it had intended to shield small employers in particular from discrimination claims generally. In view of the fact that the administrative mechanism is designed to promote the informal resolution of discrimination complaints so as to avoid the delay and expense

associated with litigation, it defies common sense to conclude that the legislature would have eschewed that mechanism for this state's smallest employers—those least likely to be able to afford such litigation—in favor of an approach that would require only small employers to defend discriminatory discharge claims in court in the first instance.

The plaintiff also asserts that, because certain remedies available under the act, specifically, court costs and attorney's fees, generally are not available at common law, we may infer that the legislature excluded small employers from the act not to shield them from liability entirely but, rather, to protect them from the enhanced statutory remedies. This argument fails for several reasons. First, those remedies were not added to the statutory scheme until 1991; see Public Acts 1991, No. 91-331, § 5; see also *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 113, 653 A.2d 782 (1995); even though the act has contained an exemption for small employers since its original passage in 1947.[18] It is apparent, therefore, that the legislative decision to exempt such employers had nothing to do with those statutory remedies. Furthermore, in light of the important purposes served by the act's administrative procedures, it is highly unlikely that the legislature would have opted to exclude small employers from that mechanism simply to prevent an award of court costs or attorney's fees against those employers. Indeed, if the legislature merely had been unwilling to subject small employers to the statutory remedies, the most effective way to alleviate that concern would have been to exempt such employers from those remedies, rather than to exclude them from the

[18] As we have indicated, the act initially exempted employers with fewer than five employees. See General Statutes (Sup. 1947) § 1360i. In 1967, the legislature modified the exemption to exclude employers with fewer than three employees. Public Acts 1967, No. 253.

act entirely. We therefore reject the plaintiff's assertion that the legislature excluded small employers from the act because of the additional remedies available thereunder.[19]

As we have indicated, the Appellate Court also relied on several state and federal antidiscrimination statutes, and our state constitution's equal protection clause, to support its conclusion that there exists a well-defined public policy in this state against pregnancy-related discrimination that applies to all employers, including those with fewer than three employees. We again disagree with the reasoning of the Appellate Court. With respect to the federal and state statutes upon which the Appellate Court relied, those statutes, although expressive of a general public policy to eliminate sex discrimination, simply cannot trump the expression of public policy contained in the statutory scheme—the act—that specifically addresses discriminatory employment practices *and expressly exempts small employers from its coverage.* As we repeatedly have stated in seeking to ascertain legislative intent from more than one statutory pronouncement on a particular subject, specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be

---

[19] As the Appellate Court noted, the tort of wrongful discharge in contravention of public policy applies uniquely to terminations, and not to the other discriminatory practices prohibited by the act. *Thibodeau* v. *Design Group One Architects, LLC,* supra, 584 n.7. The plaintiff suggests that this distinction supports her contention that allowing a discriminatory discharge claim against an employer with fewer than three employees would not violate any legislative mandate reflected in the statutory exemption afforded those employers. We disagree. The legislature has chosen to exempt small employers from liability under the act for all discriminatory employment practices, including discriminatory discharges. If the legislature had intended to shield small employers from liability for discriminatory employment practices other than discriminatory discharges, it easily could have done so in the act itself. See, e.g., *Winchester* v. *Northwest Associates,* 255 Conn. 379, 387, 767 A.2d 687 (2001).

controlling. See, e.g., *In re Darlene C.*, 247 Conn. 1, 14, 717 A.2d 1242 (1998); *State v. State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997). This oft-stated principle reflects the fact that specific statutory language constitutes a more accurate representation of the legislature's purpose or intent than more general pronouncements concerning the same subject matter.

With respect to the equal protection clause of the Connecticut constitution; Conn. Const., amend. XXI; that provision, which broadly prohibits, inter alia, sex discrimination in a person's exercise or enjoyment of his or her civil or political rights, is "designed as a safeguard against acts of the state *and [does] not limit the private conduct of individuals or persons.*" (Emphasis added.) *Lockwood v. Killian*, 172 Conn. 496, 501, 375 A.2d 998 (1977); see also *Cologne v. Westfarms Associates*, 192 Conn. 48, 63, 469 A.2d 1201 (1984) (same). In light of the foregoing limitation on the protections afforded under the equal protection clause of the state constitution,[20] we do not see how that constitutional guarantee can be construed as a statement of public policy sufficient to override the explicit, contrary expression of legislative intent embodied in the act.

We also disagree with the Appellate Court's reliance on *Evening Sentinel* v. *National Organization for Women*, supra, 168 Conn. 26, in which we noted our legislature's "firm commitment . . . to do away with sex discrimination altogether."[21] Id., 34. Of course, there

---

[20] The plaintiff does not allege the existence of state action in the present case.

[21] We note that our statement in *Evening Sentinel*, a case that involved the application of the act to a particular factual scenario; see *Evening Sentinel* v. *National Organization for Women*, supra, 168 Conn. 28; is consistent with the remarks of the legislators who spoke in favor of the 1967 amendment to the act. For example, Representative James J. Kennelly stated: "This bill is in furtherance of this legislature's commitment to true equality of opportunity [in] employment." 12 H.R. Proc., Pt. 6, 1967 Sess., p. 2567. Similarly, Representative Thomas F. Dowd, Jr., stated: "We on this side of the aisle are very pleased to support this bill [as] further testimony

can be no doubt that the elimination of invidious discrimination in employment is the overarching goal of the act. It also cannot be doubted, as we observed in *Evening Sentinel*, that our legislature is committed to that goal. But just as the primary responsibility for formulating public policy resides in the legislature; see, e.g., *Toise* v. *Rowe*, 243 Conn. 623, 629, 707 A.2d 25 (1998); *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 709, 620 A.2d 780 (1993); so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals. Thus, we are constrained to recognize the balance that the legislature has struck between the state's dual interest in policing and eliminating sex discrimination in employment, on the one hand, and protecting small employers from the potentially heavy costs associated with defending against discrimination claims, on the other.[22]

---

to Connecticut's commitment to non-discriminatory practices in what ever form." Id., p. 2568. Although these comments, like our statement in *Evening Sentinel*, indicate a "commitment" to eliminating discrimination in employment, the litigation burdens on small employers nevertheless remain a concern, and, consequently, the legislature has sought to achieve its goal of eliminating employment discrimination without subjecting small employers to the costs associated with defending discrimination actions.

[22] The dissent argues that we are free to recognize a common-law cause of action in the present case because the act does not expressly supplant common-law wrongful discharge claims. This argument misses the point. The issue before us is not whether the act occupies the field generally with respect to claims of discriminatory termination against employers but, rather, whether the claim in the present case is barred by virtue of the public policy expressed in the act's exemption for small employers. It is axiomatic that a common-law action based on the public policy exemption to the at-will termination doctrine will not lie when that action is contrary to this state's public policy. In the present case, the public policy reflected in that exemption is inconsistent with the premise upon which the plaintiff's common-law claim rests, namely, that our state's public policy against sex discrimination encompasses small employers. Thus, her claim must fail for that reason. Whether the act otherwise supplants common-law actions relating to the same subject matter simply is irrelevant to our resolution of the present case.

The plaintiff cites to cases from several other jurisdictions in which courts have permitted a wrongful discharge claim akin to the plaintiff's claim even though the complainants in those cases, like the plaintiff, were barred from bringing a statutory discrimination action owing to the existence of a statutory exemption for small employers. See, e.g., *Molesworth* v. *Brandon*, 341 Md. 621, 628, 637, 672 A.2d 608 (1996); *Collins* v. *Rizkana*, 73 Ohio St. 3d 65, 70–71, 74, 652 N.E.2d 653 (1995); *Roberts* v. *Dudley*, supra, 140 Wash. 2d 70–71, 77; *Williamson* v. *Greene*, 200 W. Va. 421, 431, 490 S.E.2d 23 (1997). Nearly all of those cases are distinguishable from the present case, however, because the statutory schemes involved in those cases, while exempting certain small employers, also expressly announce a broad public policy barring sex discrimination in employment by *all* employers.[23] More importantly, however, we

[23] See *Molesworth* v. *Brandon*, supra, 341 Md. 628, quoting Md. Ann. Code art. 49B, § 14 (Sup. 1995) (plaintiff permitted to maintain claim of wrongful discharge in violation of public policy in light of statutory declaration that *"[i]t is . . . the policy of the State of Maryland . . . to assure all persons equal opportunity in receiving employment . . . regardless of . . . sex . . .* and to that end *to prohibit discrimination in employment by any person, group, labor organization, organization or any employer or his agents"* [emphasis in original; internal quotation marks omitted]); *Roberts* v. *Dudley*, supra, 140 Wash. 2d 67, quoting Wash. Rev. Code § 49.12.200 (2000) (upholding cause of action for discriminatory discharge based upon statutory pronouncement that *"every avenue* of employment shall be open to women; and any business, vocation, profession and calling followed and pursued by men may be followed and pursued by women, and *no person* shall by disqualified from engaging in or pursuing *any* business, vocation, profession, calling or employment or excluded from any premises or place of work or employment on account of sex" [emphasis in original; internal quotation marks omitted]); *Williamson* v. *Greene*, supra, 200 W. Va. 429, quoting W. Va. Code § 5-11-2 (1994) (plaintiff stated claim for wrongful discharge in contravention of public policy predicated on statutory declaration that *"[i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment . . . . Equal opportunity in the [area] of employment . . . is hereby declared to be a human right or civil right of all persons without regard to . . . sex . . . . The denial of these rights to properly qualified persons by reason of . . . sex . . . is contrary to the principles of freedom and equality of opportunity*

agree with the Supreme Court of Oklahoma that "[t]he body of our common law, which serves to supplement the corpus of statutory enactments, is powerless to abrogate the latter, either in whole or in part. Validly expressed legislative will must always control over contrary notions of the unwritten law. When in pari materia, statutory law and the precepts of either preexisting or after-declared common law are to be construed together as one consistent and harmonious whole. Once an interaction of the two sources has been measured by these principles, it is clear that . . . [the plaintiff's] common-law claim [is] not actionable as a discharge in breach of public policy because her employer, who engaged fewer than [the statutorily specified number of] employees, is outside the [a]ct's purview." *Brown* v. *Ford*, 905 P.2d 223, 228–29 (Okla. 1995); see also *Burnham* v. *Karl & Gelb, P.C.*, supra, 252 Conn. 159–61 (plaintiff alleging wrongful discharge in violation of public policy embodied in statute must demonstrate that discharge violated all relevant statutory elements).

In concluding that the plaintiff should be able to pursue a common-law wrongful discharge claim against the defendant on the basis of this state's policy against sex discrimination, the dissent simply ignores the explicit countervailing expression of public policy that is reflected in the act's exemption for small employers. In other words, the dissent fails to acknowledge that this state's public policy against sex discrimination by private employers is not absolute: the legislature has carved out an exception to that policy for small employers.

The dissent does not contend that the reasons underlying that policy judgment are improper or illegitimate. The dissent makes no claim, moreover, that the policy

*and is destructive to a free and democratic society.*" [Emphasis in original; internal quotation marks omitted.]).

concerns reflected in the statutory exemption for small employers are, for some reason, inapplicable to common-law discriminatory discharge claims. Thus, the dissent fails to address the question that forms the crux of this appeal: Why would the legislature have exempted small employers from the act unless it had concluded, as a policy matter, that such employers should not be required to defend against sex discrimination claims, notwithstanding this state's general public policy against sex discrimination? Rather, the dissent merely asserts, without explanation, that the policy expressed in the exemption is trumped by the public policy against sex discrimination. The fundamental flaw in this unsupported assertion, however, is manifest: the legislature has unambiguously expressed a contrary view by exempting small employers from liability for sex discrimination.

In sum, we see no reason why the legislature would have excluded small employers from the act unless it had decided, as a matter of policy, that such employers should be shielded from liability for employment discrimination, including sex and pregnancy-related discrimination. Neither the plaintiff nor the dissent has articulated any logical reason why this legislative policy decision is not fully applicable to common-law claims based on the public policy exception to the at-will employment doctrine. The legislature may wish to revisit its policy judgment regarding small employers. We, however, are not free to ignore the clear expression of public policy embodied in the statutory exemption currently afforded small employers under the act. Accordingly, we agree with the trial court that the plaintiff has failed to state a legally cognizable claim against the defendant.[24]

---

[24] The dissent expresses concern that our resolution of the present case "may be construed to vitiate the exception to the at-will employment" doctrine by requiring the plaintiff to show that "her [allegedly wrongful] discharge violated an express statutory provision . . . ." This concern is unfounded. We do not reject the plaintiff's claim because she failed to allege

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion SULLIVAN, C. J., and BORDEN, J., concurred.

VERTEFEUILLE, J., with whom NORCOTT, J., joins, dissenting. Although conceding that "there exists a general public policy in this state to eliminate all forms of invidious discrimination, including sex discrimination," the majority nevertheless concludes, based solely on the definition of "employer" in our Fair Employment Practices Act (act); General Statutes § 46a-51 (10);[1] that small employers are exempt from our state's otherwise clearly established public policy against sex discrimination. In other words, the majority concludes, without expressly saying so, that it is the public policy of this state to permit small employers to discriminate against their employees on the basis of sex. I respectfully disagree.

In order to resolve this appeal, we must decide the scope of our state's public policy against sex discrimination. It is undisputed that an employee, like the plaintiff, who brings a common-law action for wrongful discharge pursuant to *Sheets* v. *Teddy's Frosted Foods,*

that the defendant had violated a specific statutory provision but, rather, because her claim of a public policy violation *is defeated by the policy reflected in a specific statutory provision,* namely, the provision exempting small employers from the act. Indeed, it is the position advocated by the *dissent* that is contrary to our well established jurisprudence in this area: under our holdings, an employer cannot be held to have discharged an employee in violation of this state's public policy when the legislature clearly has evinced an intent that, for reasons of policy, the employer *shall not be subject to liability* for that discharge.

[1] General Statutes § 46a-51 provides in relevant part: "As used in section 4a-60a and this chapter . . .

"(10) 'Employer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in his employ . . . ."

*Inc.*, 179 Conn. 471, 474–75, 427 A.2d 385 (1980), must allege that her dismissal violated a clear mandate of public policy. That public policy can emanate from state statutes; *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 80, 700 A.2d 655 (1997); federal statutes; *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 585–86, 693 A.2d 293 (1997); or constitutional provisions. Id., 585 ("*Sheets* and its progeny refer generally to violations of public policy as expressed in explicit . . . constitutional provisions"); see also *State* v. *Rigual*, 256 Conn. 1, 12, 771 A.2d 939 (2001) (clear public policy of state against discrimination on basis of ancestry or national origin reflected in equal protection provision of state constitution); *Santangelo* v. *Santangelo*, 137 Conn. 404, 408, 78 A.2d 245 (1951) (public policy of open courts to every person reflected in state constitution). The plaintiff in this case alleges that her employment with the defendant was terminated on account of her pregnancy in violation of this state's clear public policy against sex discrimination as reflected in various state and federal statutes as well as our state constitution. The defendant, relying on § 46a-51 (10), contends that it is not our state's public policy to permit an employee of a small employer to pursue a civil action for sex discrimination. Our Appellate Court unanimously held "that there is a public policy against sex discrimination in employment sufficiently expressed in statutory and constitutional law to permit a cause of action for wrongful discharge. . . . Although § 46a-51 (10) excludes many employers from the requirements of the act, our clear public policy as to sex discrimination transcends such an exclusion." *Thibodeau* v. *Design Group One Architects, LLC*, 64 Conn. App. 573, 594, 781 A.2d 363 (2001).

The majority's opinion reversing the judgment of the Appellate Court hinges on the definition of employer in the act, which limits the applicability of the act to

employers with three or more employees. See General Statutes § 46a-51 (10); see footnote 1 of this dissent. I am firmly convinced that the legislature did not intend for that lone provision in the act to trump this state's otherwise clear, compelling and pervasive public policy against sex discrimination. I note that under the majority's reasoning, the legislature also must have intended to trump this state's public policy against discrimination on the basis of race and other criteria when it defined employer as it did for the purposes of the act. See General Statutes § 46a-51 (10). The majority's decision therefore will immunize small employers such as the defendant from wrongful discharge claims alleging discrimination on the basis of race as well as gender, because the act also prohibits, inter alia, racial discrimination. See General Statutes § 46a-60. I am not persuaded that the legislature intended such a result.

I further believe that the majority dismisses too easily the breadth of this state's policy against sex discrimination. As the concurrence in the Appellate Court opinion appropriately recognized, this state has a "strong, clear and fundamental public policy" against sex discrimination. *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 595–96 (*Flynn, J.*, concurring). Our legislature has committed itself clearly and firmly to the eradication of discrimination on the basis of sex by enacting a comprehensive array of statutes that prohibit sex discrimination in various forms and venues. See General Statutes § 31-75 (prohibiting discriminatory employment compensation practices); General Statutes § 38a-358 (prohibiting discriminatory practices by automobile insurers); General Statutes § 46a-58 (prohibiting discriminatory deprivation of rights); General Statutes § 46a-59 (prohibiting discriminatory practices by professional and occupational associations); General Statutes § 46a-60 (prohibiting employment discrimination); General Statutes § 46a-64 (prohibiting

discriminatory public accommodations practices); General Statutes § 46a-64c (prohibiting discriminatory housing practices); General Statutes § 46a-66 (prohibiting discriminatory credit practices); General Statutes § 46a-70 (guaranteeing equal employment opportunities in state agencies); General Statutes § 46a-71 (prohibiting discriminatory practices by state agencies); General Statutes § 46a-72 (prohibiting discriminatory job placement by state agencies); General Statutes § 46a-73 (prohibiting discriminatory state licensing and charter procedures); General Statutes § 46a-74 (prohibiting state agencies from permitting discriminatory practices in professional or occupational associations, public accommodations, or housing); General Statutes § 46a-75 (prohibiting discrimination in educational, vocational and job training programs); General Statutes § 46a-76 (prohibiting discriminatory allocation of state benefits). In addition, the equal protection clause of our state constitution; Conn. Const., art. I, § 20; was amended by the legislature in 1974 to add sex as a protected class. See Conn. Const., amend. V. Our equal protection clause now declares that no person shall be discriminated against on the basis of sex.[2]

Moreover, in 1973, our legislature passed a resolution ratifying the proposed equal rights amendment to the constitution of the United States,[3] becoming one of only thirty states to do so,[4] further evidencing this state's

[2] Article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[3] House J.R. No. 1, January Sess., 1973 Public Acts, vol. 1, p. LXXIV. Section 1 of the federal equal rights amendment provided: "Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex." H.R.J. Res. No. 208, 92d Cong., 2d Sess. (1972)

[4] Thirty-five states had ratified the proposed amendment initially, but five states subsequently voted to rescind their ratification. 2 Encyclopedia of the American Constitution (L. Levy et al. eds., 2000) p. 918.

strong policy against sex discrimination. More than twenty-five years ago, this court found that "this mass of legislation evidences a firm commitment . . . to do away with sex discrimination altogether." *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 34, 357 A.2d 498 (1975).

Federal laws provide further evidence of a well established public policy against sex discrimination. Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.; prohibits employers from discriminating on the basis of sex.[5] The Family and Medical Leave Act of 1993; 29 U.S.C. § 2601 et seq.; requires employers to grant employees a twelve week leave of absence following the birth of a child.[6] The Pregnancy Discrimination Act of 1978; Pub. L. No. 95-555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e [k]); amended Title VII to prohibit discrimination on the basis of pregnancy.[7]

The majority concludes that our general public policy against sex discrimination, as reflected in these statutes and our equal protection clause, cannot prevail over the specific statutory exemption of § 46a-51 (10). The majority states: "As we repeatedly have stated in seeking to ascertain legislative intent from more than one

---

[5] Title 42 of the United States Code, § 2000e-2 (a), provides in relevant part: "It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

[6] Title 29 of the United States Code, § 2612 (a) (1), provides in relevant part: "Subject to section 2613 of this title, an eligible employee shall be entitled to a total of [twelve] workweeks of leave during any [twelve month] period for one or more of the following:

"(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter. . . ."

[7] Title 42 of the United States Code, § 2000e (k), provides in relevant part: "The terms 'because of sex' or 'on the basis of sex' [as used in Title VII] include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ."

statutory pronouncement on a particular subject, specific terms in a statute covering the given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling." Although this correctly states a rule of statutory construction, statutory construction is not the issue before us. The question in this case is whether a single statutory definition was intended to override the otherwise overwhelming evidence of this state's clear public policy against sex discrimination. I do not believe the legislature evinced an intention, by its exemption of small employers from the act, to trump the clear and unequivocal public policy against sex discrimination that is reflected by the comprehensive legislative scheme seeking to root out such discrimination. As the Supreme Court of Ohio aptly stated: "In cases of *multiple*-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislature's intent in enacting the statute to preempt common-law remedies." (Emphasis in original.) *Collins* v. *Rizkana*, 73 Ohio St. 3d 65, 73, 652 N.E.2d 653 (1995). Section 46a-51 (10) does not apply beyond the borders of the act and its adoption by the legislature does not reveal any intention to bar common-law claims based on gender discrimination. Had the legislature intended to preclude such common-law claims, it certainly knew how to make its intention clear. See, e.g., General Statutes § 31-275 et seq. (Workers' Compensation Act);[8] General Statutes § 52-572n (Connecticut product liability statute).[9]

---

[8] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section *shall not be liable for any action for damages* on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained . . . ." (Emphasis added.)

[9] General Statutes § 52-572n (a) provides in relevant part: "A product liability claim . . . may be asserted *and shall be in lieu of all other claims against product sellers,* including actions of negligence, strict liability and

This state's concerted effort to eliminate discrimination on the basis of gender reflects a fundamental public policy that is broader than the remedies afforded by any one statute. The bare fact that the legislature excluded employers such as the defendant from the provisions of the act does not, without more, evince a clear legislative intent to contravene this state's long-standing public policy prohibiting sex discrimination. On the contrary, the legislative history reveals that the act was intended to further this state's fight against discrimination, including discrimination on the basis of sex.[10] The fact that the act does not apply to all employers does not diminish that public policy, but only demonstrates a

warranty, for harm caused by a product." (Emphasis added.)

In *Winslow* v. *Lewis-Shepard, Inc.*, 212 Conn. 462, 470–71, 562 A.2d 517 (1989), this court concluded that the language of § 52-572n (a) alone did not unambiguously express a legislative intent to preclude common-law product liability claims. On the basis of the statute's legislative history, however, the court held that the legislature had intended for § 52-572n to preclude common-law product liability claims. In light of our conclusion in *Winslow* that the language of § 52-572n alone did not express clearly whether the legislature had intended to preclude all common-law claims for product liability, the majority's conclusion in this case that § 46a-51 (10) evinced an intent by the legislature to preclude all common-law claims for employment discrimination against small employers is untenable, as § 46a-51 (10) is silent on the matter.

[10] The Appellate Court's thoughtful and comprehensive opinion amply demonstrates this. "We do note, however, that the legislative history of the 1967 amendment, which added sex as a classification, supports our finding of a public policy against sex discrimination embodied in that act. Representative James J. Kennelly stated: 'This bill is in furtherance of this legislature's commitment to true equality of opportunity [in] employment. No period in Connecticut legislative achievements has been more enlightened, or more dedicated in the field of human rights . . . . This bill represents continued and expanded implementation of sound and realistic "human rights" legislation and I respectfully urge its adoption.' 12 H.R. Proc., Pt. 6, 1967 Sess., pp. 2567–68. Representative Thomas F. Dowd, Jr., stated: 'We on this side of the aisle are very pleased to support this bill for further testimony to Connecticut's commitment to non-discriminatory practices in what ever form.' Id., p. 2568. Although we find neither of those comments dispositive of the issue, they support a general public policy in Connecticut against sex discrimination." *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 584–85 n.8.

legislative determination to limit the reach of that statute and its remedies. See *Molesworth* v. *Brandon*, 341 Md. 621, 637, 672 A.2d 608 (1996); *Collins* v. *Rizkana*, supra, 73 Ohio St. 3d 73–74; *Roberts* v. *Dudley*, 140 Wash. 2d 58, 70, 993 P.2d 901 (2000); *Williamson* v. *Greene*, 200 W. Va. 421, 429–31, 490 S.E.2d 23 (1997).

The highest courts of several states have considered and rejected the argument the majority now embraces. For example, in *Roberts* v. *Dudley*, supra, 140 Wash. 2d 60, the Supreme Court of Washington considered whether the exemption of small employers from Washington's employment discrimination statute also exempted such employers from common-law wrongful discharge claims. In holding that common-law claims were not barred, the court stated that the statutory exemption "is not in itself an expression of the public policy, and the definition of 'employer' for the purpose of applying the statutory remedy does not alter or otherwise undo to any degree this state's public policy against employment discrimination. . . . If it is argued that the exclusion of small employers from the statutory remedy is itself a public policy, that policy is simply to limit the statutory remedy, but is not an affirmative policy to '[exempt] small employers from [common-law] discrimination suits.' " (Citation omitted.) Id., 70; see also *Molesworth* v. *Brandon*, supra, 341 Md. 637; *Collins* v. *Rizkana*, supra, 73 Ohio St. 3d 73–74; *Williamson* v. *Greene*, supra, 200 W. Va. 429–31. I find this reasoning persuasive.

I am not persuaded by the majority's attempt to distinguish *Roberts* and the other out-of-state cases relied on by the plaintiff. In each of those cases, the court held that an at-will employee could maintain a common-law claim for wrongful discharge against her employer even though the employer was specifically excluded from the provisions of the particular state's employment discrimination statute. Although the statutes under consid-

eration in those cases were not identical to our act, the differences are of little import. The majority places great weight on the fact that the employment discrimination statutes at issue in *Molesworth*, *Roberts* and *Williamson*, respectively, contained language explicitly declaring a broad public policy to eliminate sex discrimination in employment. Such a statutory preamble, however, does not necessarily equate to a public policy more comprehensive or more fundamental than the policy of this state. As the Appellate Court appropriately recognized: "The existence of a public policy does not hinge on the use of precise phraseology such as 'it is the public policy of this state.' " *Thibodeau* v. *Design Group One Architects, LLC*, supra, 64 Conn. App. 592. The Supreme Court of Ohio recognized this in *Collins* v. *Rizkana*, supra, 73 Ohio St. 3d 70. The court in *Collins* held that the existence of a clause in Ohio's employment discrimination statute expressly prescribing the state's public policy was not the determinative factor of whether a public policy in fact existed. Rather, the court emphasized that the public policy emanating from two other statutes that did not contain such an explicit declaration was "independently sufficient to allow for the recognition of a cause of action for wrongful discharge in violation of public policy." Id.

Furthermore, the majority's emphasis on these explicit declarations of public policy is contradicted both by the majority's own concession that there exists in this state "a general public policy to eliminate sex discrimination," and by earlier cases decided by this court. This court previously has found a public policy sufficient to support a common-law claim for wrongful discharge in a state statute that promotes consumer protection by regulating product labeling; *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480; in two state statutes that regulate workplace safety; *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 80; and

in a federal statute that bars fraud in government con-
tracts. *Faulkner* v. *United Technologies Corp.*, supra,
240 Conn. 577–78, 585–86. None of those decisions
hinged on the existence of a statutory declaration
explicitly defining the public policy embodied by the
statute in question.

The majority also attempts to discredit the plaintiff's
reliance on the equal protection clause of our state
constitution. See footnote 2 of this opinion. The major-
ity concludes that the state equal protection clause has
no bearing on the present case because it applies only
to state action. This conclusion mischaracterizes the
present case and the nature of claims brought pursuant
to *Sheets*. When considering a claim under *Sheets*, we
properly look to see whether the plaintiff has demon-
strated the existence of a clear mandate of public policy
upon which a common-law cause of action may be
predicated. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra,
179 Conn. 474–75. The public policy can emanate from
statutes, both state and federal, as well as constitutional
provisions. See *Faulkner* v. *United Technologies Corp.*,
supra, 240 Conn. 585 ("*Sheets* and its progeny refer
generally to violations of public policy as expressed in
explicit . . . constitutional provisions"); see also *State*
v. *Rigual*, supra, 256 Conn. 12 (clear public policy of
state reflected in equal protection provision of state
constitution); *Santangelo* v. *Santangelo*, supra, 137
Conn. 408 (public policy reflected in state constitution).
A plaintiff does not have to show that her discharge
violated one of those statutes or constitutional provi-
sions, but only that her discharge violated the *public
policy* reflected in that legislation. In the present case,
the plaintiff is not alleging that her dismissal violated
the equal protection clause of our state constitution,
as such a claim clearly would fail for lack of state
action. Rather, the plaintiff is alleging that her discharge
violated the public policy against sex discrimination

that is reflected in that constitutional provision, as well as nearly twenty state and federal statutes. As one of the guideposts we follow in discerning this state's public policy, the equal protection clause is indispensable to a proper resolution of this case. See *State* v. *Rigual,* supra, 12; *Faulkner* v. *United Technologies Corp.,* supra, 585; *Santangelo* v. *Santangelo,* supra, 408; see also *Rojo* v. *Kliger,* 52 Cal. 3d 65, 90, 801 P.2d 373, 276 Cal. Rptr. 130 (1990) (equal protection provision in state constitution "unquestionably reflects a fundamental *public policy* against discrimination in employment . . . on account of sex" [emphasis in original]); *Molesworth* v. *Brandon,* supra, 341 Md. 632 (state statutes, executive order and constitutional amendment together are "strong evidence of legislative intent to end discrimination based on sex"); *Collins* v. *Rizkana,* supra, 73 Ohio St. 3d 69 ("[c]lear public policy sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the [legislature] in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of [the state] and the United States" [internal quotation marks omitted]); *Roberts* v. *Dudley,* supra, 140 Wash. 2d 66 (constitutional provision can represent source of public policy); *Williamson* v. *Greene,* supra, 200 W. Va. 429 (same).

I am also concerned that the majority's decision in this case may be construed to vitiate the exception to the at-will employment doctrine that we recognized in *Sheets.* In refusing to recognize the plaintiff's common-law cause of action, the majority relies in part on *Burnham* v. *Karl & Gelb, P.C.,* 252 Conn. 153, 745 A.2d 178 (2000). Inasmuch as the majority relies on that case for the proposition that the plaintiff may not maintain her common-law action absent a showing that her discharge violated an express statutory provision, the majority's reliance is misplaced. First, although in *Burnham* we

denied the plaintiff's common-law claim for wrongful discharge, we rested our decision in part on the fact that the plaintiff had statutory remedies available to her under both state and federal law. In this case, the plaintiff has no such statutory remedies. Second, this court never has held that a plaintiff must establish either a statutory or a constitutional violation to maintain a common-law cause of action for wrongful discharge. In fact, in *Sheets* the court expressly declined to make such a violation a requirement for the cause of action. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480. To establish such a requirement today would eviscerate *Sheets* and its progeny and would skew greatly the balance between employers and employees that those cases have so diligently maintained.

I would conclude that, despite the definition of employer in § 46a-51 (10), there is in this state a clear, well established public policy against sex discrimination on which the plaintiff may rely to establish a cause of action for wrongful discharge.

Accordingly, I respectfully dissent.